IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-1528-JLK

RAE ROBINSON and KELLY FOSTER,

    Plaintiffs,

v.

OPPENHEIMERFUNDS, INC., a Colorado Corporation, and
OPPENHEIMERFUNDS DISTRIBUTOR, INC., a New York Corporation,

    Defendants.

_____

ORDER ON MOTION TO DISMISS
_____

KANE, J.

    This is a diversity action brought by mother-daughter plaintiffs Rae Robinson and Kelly Foster against OppenheimerFunds, Inc. (OFI) and OppenheimerFunds Distributor, Inc. (OFDI) arising out of losses they have suffered since 2008 in the value of life insurance policies that had been invested in Oppenheimer's High Income Fund. According to Plaintiffs, the High Income Fund was created as a "clone" of Oppenheimer's Champion Fund specifically to facilitate investment by variable life insurance policies and annuities that could not purchase shares of mutual funds like Champion directly. Both the Champion and High Income Funds suffered substantial losses in the wake of the 2008 financial downturn, losses Plaintiffs attribute to the reckless and highly speculative investment strategy of Angelo Manioudakis, the portfolio

manager who took the helm of both in 2006.

In the wake of the 2008 downturn, Champion Fund became the subject of substantial litigation and, ultimately, an SEC investigation. In this district, investors launched separate nationwide federal securities fraud class actions in 2009, naming as defendants Manioudakis, OFI, OFDI, and individual members of OFI's board of trustees. *See In re Oppenheimer Champion Fund Securities Fraud Class Actions*, Civil Action No. 09-cv-386-JLK (consolidated with 09-cv-525-JLK). Other investors brought shareholder derivative actions on behalf of the Fund for breach of fiduciary duty and breach of contract,[1] and still others filed individual lawsuits, like this one, asserting personal claims for damages for deceptive trade practices, common law fraud, and negligent supervision.[2]

By March of 2012, all of the Champion Fund individual and class actions originally filed or transferred to this court had been settled.[3] On June 6, 2012, the SEC

---

[1] *E.g. Bohus v. Manioudakis, et al.*, Civil Action No. 10-cv-1473-JLK (D. Colo.)(Champion Fund).

[2] *E.g. Hendricks v. OppenheimerFunds, Inc., et al.*, 11-cv-487-JLK, *Milano v. OppenheimerFunds, Inc. et al.*, 11-cv-600-JLK, and *Cofoid et al. v. OppenheimerFunds, Inc., et al.*, Civil Action No. 11-cv-601-JLK (all transferred from the Northern District of Illinois) and *Duenas v. OppenheimerFunds, Inc., et al.*, 11-cv-2631-JLK (filed October 7, 2011).

[3] The 2009 securities fraud class actions were settled on behalf of a nationwide class of Champion Fund investors in May of 2011, with Final Judgment entering on September 30, 2011. *See In re Oppenheimer Champion Fund Securities Fraud Class Actions*, Civil Action No. 09-cv-386-JLK (Doc. 169)). The *Bohus* action was settled on behalf of plaintiffs individually and derivatively on behalf of the Fund in March 2012, with the Order for final approval and judgment entering on May 10, 2012. *See Bohus*, No. 10-cv-1473 (Doc. 31). The *Milano*, *Cofoid*, and *Duenas* individual actions were settled on unspecified terms on March 15, 2012. Each of these cases had been stayed

issued an Order finding OFI and OFDI liable for federal securities violations, and in particular for making materially misleading statements regarding risk and the Fund's investment strategy in the 2008 Champion Fund Prospectus.  It is in the context of this denouement in the Champion Fund litigation that Plaintiffs Rae Robinson and Kelly Foster filed their June 13, 2012 Complaint in the instant action.

By characterizing the High Income Fund as a Champion Fund "clone," Plaintiffs rely heavily on the SEC's June 6 Champion Fund Order to state their claims.  They incorporate the Order by reference as Exhibit 2 to their Complaint, and use its findings regarding material misrepresentations in the 2008 Champion Fund Prospectus to assert claims against OFI/OFDI for representations made in the 2008 prospectus of its "clone." *See* Compl. ¶¶ 45-49 and Ex. 2 (SEC Order).  Specifically, Plaintiffs allege the High Income Fund, like the Champion Fund, was portrayed in fund prospectuses as a "relatively safe" bond mutual fund involving no "undue risk," but changed tack in 2006 when Manioudakis assumed the reins.  Plaintiffs allege Manioudakis launched an investment strategy focused on highly speculative commercial mortgage-backed securities (CMBS), total-return swaps, and other derivative investments about which investors were kept in the dark.  When the 2008 downturn in the financial market triggered a collapse in the Fund's highly leveraged securities, Plaintiffs suffered a concomitant decrease in the value of the assets in their life insurance policies.

---

during settlement negotiations, and no substantive rulings on any then-pending motions to dismiss were issued in any of them.

While the "clone" analogy provides Plaintiffs with tested facts to support a narrative against OFI/OFDI, Plaintiffs abandon the narrative at its penultimate step. Rather than use the analogy to assert federal securities claims against OFI/OFDI as the SEC did, Plaintiffs bend them to assert state law claims that seem strained and indiscriminate in comparison. These state law claims have different essential elements often requiring higher standards of proof. The difference is fatal to Plaintiffs' claims.

### *Background*.

Plaintiffs Rae Robinson, 86, and her daughter, Kelly Foster, purchased variable insurance policies in the fall of 2000 and decided, at the recommendation of their Salt Lake City-based financial advisor, to invest all of the policies' sub-accounts in the Oppenheimer High Income Fund. According to Plaintiffs, OFDI had a selling arrangement with the advisor's employer, and the advisor relied on information given to him by Defendants to tell them "in general terms that he believed the High Income Fund was relatively safe." (Compl. ¶ 18.)

According to Plaintiffs, the High Income Fund was created as "a 'clone'" of the Oppenheimer Champion Fund specifically so that variable life insurance and annuity investors could replicate that Fund's performance. (Compl. ¶ 13.) While "technically distinct" from the Champion Fund, Plaintiffs contend the High Income Fund employed the same investment strategy as the Champion Fund and invested in similar securities. *Id.* The prospectuses of both Funds described their strategies as involving no "undue risk."

In late 2006, OFI vice-president Angelo Manioudakis took over day-to-day control

of both the High Income and Champion Funds.  Plaintiffs contend Manioudakis embarked on a "new" trading strategy that involved concentrating both Funds' investments in highly speculative commercial mortgage-backed securities and other derivatives, including total-return swap (TRS) contracts. (Compl. ¶¶ 31-32.)  TRS contracts are speculative and complex agreements between parties to exchange cash flows in the future based on how a set of securities performs in the present.  Manioudakis's TRS investments were essentially a bet that mortgage-backed securities would rally in 2008.  They did not.  Instead, as subprime mortgage defaults continued to rise, the value of the Funds' highly leveraged mortgage related holdings plummeted.

Plaintiffs contend Manioudakis "mismanaged" both Funds, "recklessly" making them "very risky." (Compl. ¶¶ 20-22.)  With respect to the High Income Fund, Plaintiffs allege Manioudakis "exceeded the parameters" outlined in the Fund's 2008 Prospectus and Statement of Additional Information by concentrating its underlying assets in the commercial mortgage industry and "leveraging them more than was allowed." *Id.*  Plaintiffs excerpt language and annual return charts from the High Income Fund's April 2008 Prospectus, alleging the information was "inserted . . . to lead investors to believe that this was not a risky or volatile Fund." (Compl. ¶ 25.)  As a result, Plaintiffs contend the 2008 offering statements issued by OFI and OFDI "substantially misrepresented the highly speculative nature of the High Income Fund." *Id.* ¶ 20.

As previously stated, Plaintiffs' Complaint relies heavily on the SEC's June 12, 2012 Order finding OFI and OFDI liable under federal securities laws for making

misleading statements related to the Champion Fund in the Fund's 2008 Prospectus. By characterizing the High Income Fund as a Champion Fund "clone," Plaintiffs repurpose the SEC's findings as support for their common law and consumer protection claims against OFI and OFDI related to the High Income Fund. Unfortunately for Plaintiffs, the 1933 Act violations found by the SEC are not necessarily sufficient to support the claims they allege and that is fatal to their claims.

*Discussion*.

The matter is before me on OFI and OFDI's Motion to Dismiss. Defendants assert multiple and overlapping grounds for dismissal, including that Plaintiffs' claims are time-barred and fail in several ways to state viable claims on which relief can be granted. Plaintiffs' Colorado Consumer Protection Act claim fails because the Act affords no protection against the securities transactions at issue and because Plaintiffs, as Utah citizens, cannot avail themselves of its protections in any event. Plaintiffs' negligence claims are derivative and not amenable to suit by individual investors acting on their own, rather than the Fund and Fund shareholders', behalf. Plaintiffs' fraud and negligent misrepresentation claims fail independently for failure to plead the necessary element of reliance. Each of these arguments is colorable, but the overarching flaw in Plaintiffs' Complaint is its reliance on allegations of federal securities fraud to state claims for which those allegations are either insufficient or, in some instances, countervailing.

I. Plaintiffs' Colorado Consumer Protection Act (CCPA) Claim Fails as a Matter of Law.

I pause at the outset to address Plaintiffs' CCPA claim, which fails as a matter of

law without reference to OFI/OFDI's other defenses.

Plaintiffs are Utah residents who concede the actions of which they complain and the harm they suffered occurred nowhere other than Utah. Based on this concession, Defendants invoke Judge Krieger's holding in *Elvig v. Nintendo of America, Inc.*, 696 F. Supp.2d 1207, 1215 (D. Colo. 2010)(Krieger, J.), to argue the Colorado Consumer Protection Act applies only to individuals who purchase goods or suffer harm in Colorado, and that under applicable choice-of-law principles, Plaintiffs "must proceed under the consumer protection statute of [their] home state." Mot. Dismiss (Doc. 6) at 17. Plaintiffs half-heartedly attempt to distinguish *Elvig*, but ultimately argue simply that the choice of law analysis should yield to the fact that Oppenheimer has such a presence in Colorado that the state has an interest in regulating OFI and OFDI's conduct wherever their investors reside. Because the CCPA does not apply to Plaintiffs' allegations in any event, I decline to parse the distinctions or second-guess Judge Krieger's *Elvig* decision.

The CCPA is concerned with unfair or deceptive trade practices that significantly impact the "public" as actual or potential "consumers" of a defendant's "goods" or services. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino*, 62 P.3d 142, 147 & 150-51 (Colo. 2003)(quoting *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)). Where the "goods" at issue are shares in mutual funds or other securities investments, however, misrepresentations as to the nature or risk of the fund or the investment are governed by the Colorado Securities Act (the "CSA"). *See* C.R.S. §§ 11-51-501, 502 (providing specific causes of action against persons who make materially misleading statements to

investors or who cause misleading statements to be made in any prospectus or other document filed with the securities commissioner).

Where two statutory schemes attempt to regulate the same conduct, the more specific statute preempts the general statute. *Showpiece Homes Corp. v. Assurance*, 38 P.3d 47 (Colo. 2001). The making of materially misleading statements and omissions in a securities fund prospectus, resulting in a substantial loss in the value of a plaintiff's investment holdings, is conduct clearly falling most specifically under the purview of the Colorado Securities Act.

Plaintiffs effort to avoid preemption under *Showpiece* is unavailing. Their essential argument is that the CCPA must be "liberally construed to effectuate the statute's remedial purpose." Response (Doc. 10) at 21. *Showpiece*, a case in which the Colorado Supreme Court allowed claims premised on an insurance company's allege pattern and practice of failing promptly to settle insurance claims to proceed under the CCPA, did not involve securities or securities transactions and is simply inapposite to Plaintiffs' claims here. *Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co*, 373 F.3d 1100 (10th Cir. 2004), a case that does tangentially involve securities, also provides no support for Plaintiffs being able to maintain a CCPA claim here. The issue in *Dean Witter* was whether defendant's pervasive practice of spurning customers' calls and misinforming them as to the amount of money in their annuity accounts was a "public" harm remediable under the CCPA or a "private" harm not actionable under the Act. The "public/private" distinction is not relevant to the preemption question at issue, and no "liberal"

construction of the CCPA will save Plaintiffs' claim. To the extent Plaintiffs' CCPA claim is premised on the 2008 High Income Fund prospectus and the way in which OFI and OFDI's actions rendered statements in that prospectus misleading to them as investors, the CSA governs and Plaintiffs' Colorado Consumer Protection Act Claim is DISMISSED.

II.  <u>Plaintiffs' Claim for Negligent Supervision Similarly Fails to State a Claim as a Matter of Law</u>.

Plaintiffs are High Income Fund investors who have suffered losses common to all Fund investors, i.e., the devaluation of Fund shares that constitute the assets in their life insurance policy investment accounts. They have suffered no unique harm and can assert no direct claim against Manioudakis for their alleged losses.[4]

Plaintiffs seek to avoid this problem by leapfrogging Manioudakis and asserting claims related to his allegedly reckless investment strategy and mismanagement directly against OFI and OFDI under theory of negligent supervision. As with their claim for deceptive trade practices under the CCPA, Plaintiffs' negligent supervision theory of relief is misapplied in the securities fraud context and subject to dismissal. It is an end-

---

[4] As a general rule, a shareholder cannot maintain a personal action against a corporate officer or director whose action causes harm to the corporation. *In re Stat–Tech*, 47 F.3d 1054, 1060 (10th Cir.1995) (citing *Nicholson v. Ash*, 800 P.2d 1352, 1356 (Colo.App.1990)). This is because that action belongs to the corporation, and must be brought by it. *Id*. However, Colorado courts recognize an exception to the general rule when "'the actions of the third party that injure the corporation ... cause [plaintiff] injury as a stockholder, unique to himself and not suffered by the other stockholders.'" *Stat–Tech* at 1060 (quoting *Nicholson* at 1357). Plaintiffs can allege no such injury in this case.

9

run around a more tailored and specific statutory cause of action (in this context, a claim for control person liability under § 15 of the 1933 Securities and Exchange Act) that governs the conduct alleged.

Plaintiffs' negligent supervision theory of relief is that OFI and OFDI, collectively as Manioudakis's employer or "master," had "duties to supervise its agents and registered representatives, including Manioudakis, to protect [its] customers" and breached those duties by "failing to adequately supervise [him]." Compl. ¶¶ 89-91.  Specifically, Plaintiffs allege OFI/OFDI failed to "establish adequate and/or written procedures to supervise and monitor the conduct of Manioudakis," to "enforce its supervisory procedures and policies," and to "ensure Manioudakis' trading strategy was proper in light of the investment objective of the Fund." *Id.* ¶ 91. Plaintiffs offer no case law or other authority that would support allowing a mutual fund shareholder to sue the fund's manager directly for such failures, and that is likely why these types of claims were brought derivatively against the Champion Fund in the *Bohus* action.  Because Plaintiffs have no direct claim for negligent supervision and have not even attempted to meet any of the requirements for bringing a derivative claim on behalf of the High Income Fund, their negligent supervision claim is DISMISSED.

III.  No Claim for Negligent Misrepresentation can be Asserted Against OFI or OFDI Under the Facts Alleged.

The Restatement (Second) of Torts § 552 provides a remedy for negligent misrepresentation against "one who, in the course of his business, profession, or

employment . . . supplies false information for the guidance of others in their business transactions." Colorado has adopted the Restatement section, *see Keller v. A.O. Smith Harvestore Prod., Inc.*, 819 P.2d 69 (Colo. 1991), and this court has interpreted it as applying to persons in the business of supplying information for use in commercial transactions with others. *See Snoey v. Advanced Forming Technology, Inc.*, 844 F. Supp. 1394, 1400 (D. Colo. 1994). The cause of action is essentially a professional liability/malpractice claim, and Plaintiffs offer no case law citation or authority where it was applied to managers of mutual fund companies who make representations and disclosures in prospectuses and offering statements in the course of their statutorily mandated duties under federal and state securities laws.  In the absence of such authority, this cause of action is DISMISSED.

IV. <u>Plaintiffs' Claim for Common Law Fraud</u>.

Plaintiffs' remaining claim for common law fraud is premised on allegations that Defendants "misrepresented the level of risk associated with the High Income Fund" by portraying it as not having "undue risk" and by representing that the Fund "would have a broadly diversified portfolio to help moderate the special risk of investing in high-yield debt instruments."  Compl. (Doc. 1) ¶ 73.  Plaintiffs do not specify where or when these misrepresentations were made, but the implication is they are from a High Income Fund prospectus.  Plaintiffs assert that "Defendants knew the aforesaid statements were false at the time they were made to Plaintiffs" and "made [them] with the intent to induce the

Plaintiffs to invest money in the High Income Fund and to keep the money invested in the Fund as the Fund took on excessive risk." *Id.* at ¶¶ 75-76. These allegations fail under any applicable pleading standard to state a viable claim for relief.[5]

To the extent Rule 9(b) applies to Plaintiffs' fraud claim, it requires them to plead the circumstances constituting fraud "with particularity." In the Tenth Circuit, this requires a complaint alleging fraud must "'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)(quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 982, 987 (10th Cir. 1992)). Plaintiffs elide each of these facts, quoting vaguely from High Income Fund prospectuses and failing to link those prospectuses in any way to their 2000 investment decision. Even assuming the quoted statements were materially misleading for purposes of fraud (an assertion Defendants dispute and I do not reach), Plaintiffs' allegations are too tangential

---

[5] "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(quoting *Bell Atlantic v. Twombly*, 550 U.S. 540, 570 (2007)). "Plausible" does not mean the allegations are "likely to be true," but rather that they are "enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). Accordingly, courts must consider all well-pleaded facts for purposes of determining plausibility, but need not consider "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 129 S. Ct. at 1950.

to satisfy Rule 9(b).[6]

Even if Plaintiffs' fraud allegations satisfied Rule 9(b), their failure to plead reliance is fatal to their claims. Reliance is an essential element to the establishment of liability for common law fraud. *Zimmerman v. Loose*, 425 P.2d 803, 807 (Colo. 1967)(party claiming the fraud must have "relied upon the representations, have had a right to rely on them, have acted in accordance with the reliance, and in doing so have been damaged"). Plaintiffs invested in the High Income Fund in 2000. At the time of their investment, the acts they claim rendered the Fund's "no undue risk" prospectus statements misleading would not occur for another six years. Plaintiffs do not allege that they relied on, or even read, any of the Fund's alleged misstatements during or after the 2006 time period.

Again, even if Plaintiffs had read the materially misleading 2008 Prospectus, their reliance allegation is limited to the assertion that they "held" onto their shares (rather than selling them) in reliance on the fraud and were damaged as a result. As Defendants point out, the few courts that have not categorically rejected holder claims (including this one) have subjected them to specific pleading requirements. *See Ohanessian v. Pusey*, 2010 WL 728549 (D. Colo. Feb. 25, 2010)(Kane, J.)(collecting cases). Specifically, a plaintiff

---

[6] I note the only reference in the Complaint to Plaintiffs' initial investment decision was that it was made on the recommendation of their non-Oppenheimer affiliated financial advisor, who told them merely, and "in general terms," "that he believed the High Income Fund was relatively safe." (Compl. ¶ 18.)

must demonstrate she had concrete plans to sell her securities but refrained from doing so in reliance on a misrepresentation made directly to her. *Id.*  In *Ohanessian*, I dismissed plaintiffs' fraud and negligent misrepresentation holder claims because "[n]one of the Plaintiffs identifie[d], or even alleged[d], an instance where he actually planned to sell his stock but refrained from doing so in reliance on a specific fraudulent misrepresentation of a Defendant." 2010 WL 728549 at *1, n.2.  Without allegations of fact tending to demonstrate actual reliance, "Colorado courts will not provide a cause of action for fraudulent 'holding.'" *Id.*  Plaintiffs do not come close to meeting this standard.

### *Conclusion*.

Plaintiffs' federal securities fraud allegations fail to state viable claims for relief under any of the state or common law theories of fraud or negligence they assert in their Complaint.  For this reason, I do not address Defendants' statute of limitations defenses, which are often fraught with contentious disputes regarding when, and how Plaintiffs should have discovered the facts giving rise to their claims.  Because Plaintiffs have no viable claims under the facts alleged irrespective of those defenses, the inquiry would be futile in any event.

Based on the foregoing, Defendants' Motion to Dismiss (Doc. 6) is GRANTED, and Plaintiffs' claims are DISMISSED.

Dated February 27, 2013.

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE
